## ROBINSON *v.* SHELL OIL CO.

No. 95–1376.   Argued November 6, 1996—Decided February 18, 1997

*Allen M. Lenchek* argued the cause for petitioner. With him on the briefs were *Eric Schnapper, Elaine R. Jones, Theodore M. Shaw, Norman J. Chachkin,* and *Charles Stephen Ralston.*

*Paul R. Q. Wolfson* argued the cause for the United States et al. as *amici curiae* urging reversal. With him on the brief were *Solicitor General Days, Assistant Attorney General Patrick, Deputy Solicitor General Bender, C. Gregory Stewart,* and *Gwendolyn Young Reams.*

*L. Chris Butler* argued the cause for respondent. With him on the brief was *Patricia McHugh Lambert.**

---

*Briefs of *amici curiae* urging reversal were filed for the Lawyers' Committee for Civil Rights Under Law et al. by *Paul C. Saunders, Marc L. Fleischaker, Norman Redlich, Barbara R. Arnwine, Thomas J. Henderson, Richard T. Seymour, Teresa A. Ferrante, Cathy Ventrell-Monsees, Dennis Courtland Hayes, Judith H. Lichtman, Donna R. Lenhoff, Helen*

JUSTICE THOMAS delivered the opinion of the Court.

Section 704(a) of Title VII of the Civil Rights Act of 1964 makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have either availed themselves of Title VII's protections or assisted others in so doing. 78 Stat. 257, as amended, 42 U. S. C. § 2000e–3(a). We are asked to decide in this case whether the term "employees," as used in § 704(a), includes former employees, such that petitioner may bring suit against his former employer for postemployment actions allegedly taken in retaliation for petitioner's having filed a charge with the Equal Employment Opportunity Commission (EEOC). The United States Court of Appeals for the Fourth Circuit, sitting en banc, held that the term "employees" in § 704(a) referred only to current employees and therefore petitioner's claim was not cognizable under Title VII. We granted certiorari, 517 U. S. 1154 (1996), and now reverse.

I

Respondent Shell Oil Co. fired petitioner Charles T. Robinson, Sr., in 1991. Shortly thereafter, petitioner filed a charge with the EEOC, alleging that respondent had discharged him because of his race. While that charge was pending, petitioner applied for a job with another company. That company contacted respondent, as petitioner's former employer, for an employment reference. Petitioner claims that respondent gave him a negative reference in retaliation for his having filed the EEOC charge.

L. Norton, Stephen R. Shapiro, Sara L. Mandelbaum, and Martha F. Davis; and for the National Employment Lawyers Association by Douglas A. Hedin and Robert Belton.

Briefs of amici curiae urging affirmance were filed for the Equal Employment Advisory Council by Robert E. Williams and Ann Elizabeth Reesman; and for the Washington Legal Foundation by J. Thomas Kilpatrick, Daniel J. Popeo, and Paul D. Kamenar.

Petitioner subsequently sued under § 704(a), alleging retaliatory discrimination. On respondent's motion, the District Court dismissed the action, adhering to previous Fourth Circuit precedent holding that § 704(a) does not apply to former employees. Petitioner appealed, and a divided panel of the Fourth Circuit reversed the District Court. The Fourth Circuit granted rehearing en banc, vacated the panel decision, and thereafter affirmed the District Court's determination that former employees may not bring suit under § 704(a) for retaliation occurring after termination of their employment. 70 F. 3d 325 (1995).

We granted certiorari in order to resolve a conflict among the Circuits on this issue.[1]

## II

### A

Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and "the statutory scheme is coherent and consistent." *United States* v. *Ron Pair Enterprises, Inc.*, 489 U. S. 235, 240 (1989); see also *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253–254 (1992).

---

[1] The other Courts of Appeals to have considered this issue have held that the term "employees" in § 704(a) does include former employees. See *Charlton* v. *Paramus Bd. of Educ.*, 25 F. 3d 194, 198–200 (CA3), cert. denied, 513 U. S. 1022 (1994); *Bailey* v. *USX Corp.*, 850 F. 2d 1506, 1509 (CA11 1988); *O'Brien* v. *Sky Chefs, Inc.*, 670 F. 2d 864, 869 (CA9 1982), overruled on other grounds by *Atonio* v. *Wards Cove Packing Co.*, 810 F. 2d 1477, 1481–1482 (CA9 1987) (en banc); *Pantchenko* v. *C. B. Dolge Co.*, 581 F. 2d 1052, 1055 (CA2 1978); *Rutherford* v. *American Bank of Commerce*, 565 F. 2d 1162, 1165 (CA10 1977). The Fourth Circuit indicated that it joined the approach taken by the Seventh Circuit in *Reed* v. *Shepard*, 939 F. 2d 484, 492–493 (1991). But the Seventh Circuit has since repudiated the Fourth Circuit's view of *Reed*. See *Veprinsky* v. *Fluor Daniel, Inc.*, 87 F. 3d 881, 886 (1996).

The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole. *Estate of Cowart* v. *Nicklos Drilling Co.*, 505 U. S. 469, 477 (1992); *McCarthy* v. *Bronson*, 500 U. S. 136, 139 (1991). In this case, consideration of those factors leads us to conclude that the term "employees," as used in § 704(a), is ambiguous as to whether it excludes former employees.

At first blush, the term "employees" in § 704(a) would seem to refer to those having an existing employment relationship with the employer in question. Cf. *Walters* v. *Metropolitan Ed. Enterprises, Inc.*, *ante*, at 207–208 (interpreting the term "employees" in § 701(b), 42 U. S. C. § 2000e(b)). This initial impression, however, does not withstand scrutiny in the context of § 704(a). First, there is no temporal qualifier in the statute such as would make plain that § 704(a) protects only persons still employed at the time of the retaliation. That the statute could have expressly included the phrase "former employees" does not aid our inquiry. Congress also could have used the phrase "current employees." But nowhere in Title VII is either phrase used—even where the specific context otherwise makes clear an intent to cover current or former employees.[2] Similarly, that other statutes have been more specific in their coverage of "employees" and

---

[2] Our recent decision in *Walters* v. *Metropolitan Ed. Enterprises, Inc.*, *ante*, p. 202, held that the term "employees" in § 701(b), 42 U. S. C. § 2000e(b), referred to those persons with whom an employer has an existing employment relationship. See *ante*, at 207–208. But § 701(b) has two significant temporal qualifiers. The provision, which delimits Title VII's coverage, states that the Act applies to any employer "who *has* fifteen or more employees *for each working day* in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U. S. C. § 2000e(b) (emphasis added). The emphasized words specify the time frame in which the employment relationship must exist, and thus the specific context of that section did not present the particular ambiguity at issue in the present case.

"former employees," see, *e. g.*, 2 U. S. C. § 1301(4) (1994 ed., Supp. I) (defining "employee" to include "former employee"); 5 U. S. C. § 1212(a)(1) (including "employees, former employees, and applicants for employment" in the operative provision), proves only that Congress *can* use the unqualified term "employees" to refer only to current employees, not that it did so in this particular statute.

Second, Title VII's definition of "employee" likewise lacks any temporal qualifier and is consistent with either current or past employment. Section 701(f) defines "employee" for purposes of Title VII as "an individual employed by an employer." 42 U. S. C. § 2000e(f). The argument that the term "employed," as used in § 701(f), is commonly used to mean "[p]erforming work under an employer-employee relationship," Black's Law Dictionary 525 (6th ed. 1990), begs the question by implicitly reading the word "employed" to mean "*is* employed." But the word "employed" is not so limited in its possible meanings, and could just as easily be read to mean "*was* employed."

Third, a number of other provisions in Title VII use the term "employees" to mean something more inclusive or different from "current employees." For example, §§ 706(g)(1) and 717(b) both authorize affirmative remedial action (by a court or EEOC, respectively) "which may include . . . reinstatement or hiring of employees." 42 U. S. C. §§ 2000e–5(g)(1) and 2000e–16(b). As petitioner notes, because one does not "reinstat[e]" current employees, that language necessarily refers to former employees. Likewise, one may hire individuals *to be* employees, but one does not typically hire persons who already *are* employees.

Section 717(b) requires federal departments and agencies to have equal employment opportunity policies and rules, "which shall include a provision that an employee or applicant for employment shall be notified of any final action taken on any complaint of discrimination filed by him thereunder." 42 U. S. C. § 2000e–16(b). If the complaint involves

discriminatory discharge, as it often does, the "employee" who must be notified is necessarily a former employee. Similarly, § 717(c) provides that an "employee or applicant for employment, if aggrieved by the final disposition of his complaint, . . . may file a civil action . . . ." 42 U. S. C. § 2000e–16(c). Again, given that discriminatory discharge is a forbidden "personnel actio[n] affecting employees," see § 717(a), 42 U. S. C. § 2000e–16(a), the term "employee" in § 717(c) necessarily includes a former employee. See *Loeffler* v. *Frank*, 486 U. S. 549 (1988) (involving a discriminatory discharge action successfully brought under § 717 by a former Postal Service employee).[3]

Of course, there are sections of Title VII where, in context, use of the term "employee" refers unambiguously to a current employee, for example, those sections addressing salary or promotions. See § 703(h), 42 U. S. C. § 2000e–2(h) (allowing different standards of compensation for "employees who work in different locations"); § 717(b), 42 U. S. C. § 2000e–16(b) (directing federal agencies to establish a plan "to provide a maximum opportunity for employees to advance so as to perform at their highest potential").

But those examples at most demonstrate that the term "employees" may have a plain meaning in the context of a particular section—not that the term has the same meaning in all other sections and in all other contexts. Once it is established that the term "employees" includes former employees in some sections, but not in others, the term standing alone is necessarily ambiguous and each section must be ana-

---

[3] Other sections also seem to use the term "employees" to mean something other than current employees. Section 701(c) defines "employment agency" as "any person regularly undertaking . . . to procure employees for an employer or to procure for employees opportunities to work for an employer . . . ." 42 U. S. C. § 2000e(c). This language most naturally is read to mean "prospective employees." Section 701(e) uses identical language when providing that a labor organization affects commerce if it "operates a hiring hall or hiring office which procures employees for an employer . . . ." 42 U. S. C. § 2000e(e).

lyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute.[4]

Respondent argues that the addition of the word "his" before "employees" narrows the scope of the provision. Brief for Respondent 19. That argument is true, so far as it goes, but it does not resolve the question before us—namely, in what time frame must the employment relationship exist. The phrase "his employees" could include "his" former employees, but still exclude persons who have never worked for the particular employer being charged with retaliation.

Nor are we convinced by respondent's argument that Congress' inclusion in § 704(a) of "applicants for employment" as persons distinct from "employees," coupled with its failure to include "former employees," is evidence of congressional intent *not* to include former employees. The use of the term "applicants" in § 704(a) does not serve to confine, by negative inference, the temporal scope of the term "employees." Respondent's argument rests on the incorrect premise that the term "applicants" is equivalent to the phrase "future employees." But the term "applicants" would seem to cover many persons who will not become employees. Unsuccessful applicants or those who turn down a job offer, for example, would have been applicants, but not future employees. And the term fails to cover certain future employees who may be offered and will accept jobs without having to apply for those jobs. Because the term "applicants" in § 704(a) is not synonymous with the phrase "future employees," there is no basis for engaging in the further (and questionable) negative infer-

---

[4] Petitioner's examples of non-Title VII cases using the term "employee" to refer to a former employee are largely irrelevant, except to the extent they tend to rebut a claim that the term "employee" has some intrinsically plain meaning. See, *e. g., Richardson* v. *Belcher*, 404 U. S. 78, 81, 83 (1971) (unemployed disabled worker); *Nash* v. *Florida Industrial Comm'n*, 389 U. S. 235, 239 (1967) (individual who had been fired); *Flemming* v. *Nestor*, 363 U. S. 603, 611 (1960) (retired worker).

ence that inclusion of the term "applicants" demonstrates intentional exclusion of former employees.

Finally, the use of the term "individual" in § 704(a), as well as in § 703(a), 42 U. S. C. § 2000e–2(a), provides no meaningful assistance in resolving this case. To be sure, "individual" is a broader term than "employee" and would facially seem to cover a former employee. But it would also encompass a present employee as well as other persons who have never had an employment relationship with the employer at issue. The term "individual," therefore, does not seem designed to capture former employees, as distinct from current employees, and its use provides no insight into whether the term "employees" is limited only to current employees.

## B

Finding that the term "employees" in § 704(a) is ambiguous, we are left to resolve that ambiguity. The broader context provided by other sections of the statute provides considerable assistance in this regard. As noted above, several sections of the statute plainly contemplate that former employees will make use of the remedial mechanisms of Title VII. See *supra*, at 342–343. Indeed, § 703(a) expressly includes discriminatory "discharge" as one of the unlawful employment practices against which Title VII is directed. 42 U. S. C. § 2000e–2(a). Insofar as § 704(a) expressly protects employees from retaliation for filing a "charge" under Title VII, and a charge under § 703(a) alleging unlawful discharge would necessarily be brought by a former employee, it is far more consistent to include former employees within the scope of "employees" protected by § 704(a).

In further support of this view, petitioner argues that the word "employees" includes former employees because to hold otherwise would effectively vitiate much of the protection afforded by § 704(a). See Brief for Petitioner 20–30. This is also the position taken by the EEOC. See Brief for

United States and EEOC as *Amici Curiae* 16–25; see also 2 EEOC Compliance Manual § 614.7(f). According to the EEOC, exclusion of former employees from the protection of § 704(a) would undermine the effectiveness of Title VII by allowing the threat of postemployment retaliation to deter victims of discrimination from complaining to the EEOC, and would provide a perverse incentive for employers to fire employees who might bring Title VII claims. Brief for United States and EEOC as *Amici Curiae* 18–21.

Those arguments carry persuasive force given their coherence and their consistency with a primary purpose of antiretaliation provisions: Maintaining unfettered access to statutory remedial mechanisms. Cf. *NLRB* v. *Scrivener*, 405 U. S. 117, 121–122 (1972) (National Labor Relations Act); *Mitchell* v. *Robert DeMario Jewelry, Inc.*, 361 U. S. 288, 292–293 (1960) (Fair Labor Standards Act). The EEOC quite persuasively maintains that it would be destructive of this purpose of the antiretaliation provision for an employer to be able to retaliate with impunity against an entire class of acts under Title VII—for example, complaints regarding discriminatory termination. We agree with these contentions and find that they support the inclusive interpretation of "employees" in § 704(a) that is already suggested by the broader context of Title VII.

### III

We hold that the term "employees," as used in § 704(a) of Title VII, is ambiguous as to whether it includes former employees. It being more consistent with the broader context of Title VII and the primary purpose of § 704(a), we hold that former employees are included within § 704(a)'s coverage. Accordingly, the decision of the Fourth Circuit is reversed.

*It is so ordered.*