In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 07-2489

PARISIMA ABDULLAHI,

*Plaintiff-Appellant*,

*v.*

PRADA USA CORP.,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 4527—**Samuel Der-Yeghiayan**, *Judge*.

———————

SUBMITTED JANUARY 18, 2008—DECIDED MARCH 21, 2008

———————

Before POSNER, FLAUM, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff was a salesperson at a Prada store, was fired, and has sued Prada for violating Title VII of the Civil Rights Act of 1964 and also 42 U.S.C. § 1981. The suit charges, under both statutes, discrimination and retaliation. The district judge dismissed the suit for failure to state a claim.

The principal issue is the meaning of "race" in section 1981, which provides, so far as relates to a case of employment discrimination, that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce

contracts . . . as is enjoyed by white citizens." The plain-tiff's Title VII claims, with (as we'll see) one exception, are time-barred, but not her section 1981 discrimination and retaliation claims. The judge thought them barred for a different reason—that they did not charge *racial* discrimination. Her original complaint did, along with discrimination on the basis of national origin (she was born in Iran) and religion (Muslim). But in her amended complaint (which like the original one was on a stand-ard complaint form for employment discrimination sup-plied by the Northern District of Illinois and used mainly by unrepresented plaintiffs, such as the plaintiff in this case, and which has boxes, each for a different type of discrimination, that the plaintiff can place a check mark in), unlike her original complaint, only the "national origin" and "religion" boxes were checked. There is also a box marked "color," which was not checked in either complaint.

Race, nationality, and ethnicity are sometimes corre-lated, but they are not synonyms. A racial group as the term is generally used in the United States today is a group having a common ancestry and distinct physical traits. The largest groups are whites, blacks, and East Asians. Iran is a country, not a race, and an "Iranian" is simply a native of Iran. Iranians and other Central Asians are generally regarded as "white," whatever their actual skin color; many Indians, for example, are dark. Some Central Asians are indistinguishable in appearance from Europeans, or from Americans whose ancestors came from Europe, while others (besides Indians), for example Saudi Arabians, would rarely be mistaken for Europeans. Some Iranians, especially if they speak English with an Iranian accent, might, though not dark-skinned, strike some Americans as sufficiently different looking and sounding from the average American of European

ancestry to provoke the kind of hostility associated with racism. Yet hostility to an Iranian might instead be based on the fact that Iran is regarded as an enemy of the United States, though most immigrants to the United States from Iran are not friends of the current regime. So one would like to know whether the plaintiff is charging that the discrimination against her is based on politics or on her seeming to be member of a foreign "race." (Her brief is unclear on the point.)

That would be a loose sense of the word "race," but the loose sense is the right one to impute to a race statute passed in 1866. As the Supreme Court pointed out in *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 611-13 (1987), it was routine then to refer to nationalities or ethnic groups as races—the "German race," for example. "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory. . . . [A] distinctive physiognomy is not essential to qualify for § 1981 protection. If respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981." *Id*. at 613 (footnote omitted).

The plaintiff in the *Saint Francis* case was an Iraqi, rather than a native of the Arabian peninsula, so it was a reasonable inference that if he was discriminated against for being "born an Arab" the source of the discrimination was not his national origin but his ethnicity, which the Court equated to race. The present case is more

ambiguous because in it national origin and "race" coincide—Iranian. In *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 757 (7th Cir. 2006), we held, consistent with *Saint Francis*, that Iranians can be a "race" for section 1981 purposes, but that was a case in which the plaintiff alleged racial discrimination. It is possible that the plaintiff in this case "unchecked," as it were, the race box in her amended complaint because, on reflection, she decided that the discrimination she had experienced was unrelated to her ethnicity. That seems unlikely, though, and bearing in mind her pro se status and the fact that the complaint form does not explain the distinctions among "race," "color," and "national origin," we think the judge was premature in dismissing the section 1981 claims.

That leaves for consideration only the Title VII claim of post-employment retaliation. The judge dismissed it because when the plaintiff filed the charge with the EEOC that (she contends) precipitated the retaliation, she was no longer employed by Prada. She argues that Prada retaliated by spreading derogatory rumors about her. The judge was wrong to think that such a retaliation claim is not actionable under Title VII. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997).

To summarize, the dismissal of the Title VII post-employment retaliation claim and of the section 1981 claims is reversed and the case is remanded for further consideration of all those claims. The dismissal of the remaining claims is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.